ROBBINS LLP
BRIAN J. ROBBINS (190264)
brobbins@robbinsllp.com
CRAIG W. SMITH (164886)
csmith@robbinsllp.com
SHANE P. SANDERS (237146)
ssanders@robbinsllp.com
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Counsel for Plaintiff Joseph Cepeda and Proposed Co-Lead Counsel for Plaintiffs

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID PILL, Derivatively on Behalf of SUPER MICRO COMPUTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES LIANG, DAVID WEIGAND, YIH-SHYAN "WALLY" LIAW, SARA LIU, TALLY LIU, SHERMAN TUAN, JUDY LIN, ROBERT BLAIR, SUSAN MOGENSEN a/k/a SUSIE GIORDANO, and SCOTT ANGEL,<br>Defendants,<br><br>-and-<br><br>SUPER MICRO COMPUTER, INC., a Delaware Corporation,<br><br>Nominal Defendant. | No. 3:26-cv-04775-JSC<br><br>PLAINTIFFS DAVID PILL'S AND JOSEPH CEPEDA'S OPPOSITION TO STANFORD CHEN'S (I) MOTION FOR PERMISSIVE INTERVENTION AND (II) CROSS-MOTION TO CONSOLIDATE RELATED DERIVATIVE ACTIONS, APPOINT LEAD COUNSEL, AND APPOINT LEAD PLAINTIFFS<br><br>Re: ECF No. 45<br><br>Date: November 19, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8<br>Judge: Hon. Jacqueline Scott Corley<br><br>Date Action Filed: May 19, 2026 |

[Additional Captions On Following Page]

| | |
|---|---|
| JOSEPH CEPEDA, Derivatively on Behalf of SUPER MICRO COMPUTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES LIANG, SARA LIU, DAVID WEIGAND, SCOTT ANGEL, SHERMAN TUAN, TALLY LIU, JUDY LIN, ROBERT BLAIR, SUSAN MOGENSEN a/k/a SUSIE GIORDANO, YIH-SHYAN LIAW, DON CLEGG, GEORGE KAO, and DANIEL FAIRFAX,<br><br>Defendants,<br><br>-and-<br><br>SUPER MICRO COMPUTER, INC., a Delaware Corporation,<br><br>Nominal Defendant. | No. 3:26-cv-07081-JSC |
| PRATCHI ROY, Derivatively on Behalf of SUPER MICRO COMPUTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES LIANG, YIH-SHYAN (WALLY) LIAW, DAVID WEIGAND, SCOTT ANGEL, ROBERT BLAIR, DANIEL FAIRFAX, SUSIE GIORDANO a.k.a. SUSAN MORGENSEN, JUDY LIN, SARA LIU, TALLY LIU, and SHERMAN TUAN,<br>Defendants,<br><br>-and-<br><br>SUPER MICRO COMPUTER, INC., a Delaware Corporation,<br><br>Nominal Defendant. | Case No. 3:26-cv-08757-JSC |

| | |
|---|---|
| STANFORD CHEN, Derivatively on Behalf of SUPER MICRO COMPUTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES LIANG, YIH-SHYAN (WALLY) LIAW, DAVID WEIGAND, SCOTT ANGEL, ROBERT BLAIR, DANIEL FAIRFAX, SUSIE GIORDANO a.k.a. SUSAN MOGENSEN, JUDY LIN, SARA LIU, TALLY LIU, and SHERMAN TUAN,<br><br>Defendants,<br><br>-and-<br><br>SUPER MICRO COMPUTER, INC.,<br><br>Nominal Defendant. | Case No. 3:26-cv-11996 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

I. SUMMARY OF ARGUMENT ........ 1

II. PROCEDURAL HISTORY ........ 3

III. THE RELATED DERIVATIVE ACTIONS SHOULD BE CONSOLIDATED ........ 4

IV. THE MOTION FOR INTERVENTION SHOULD BE DENIED ........ 4

A. A Separate Intervention Order Is Unnecessary ........ 4

B. Chen's Proposed Intervention Reflects Improper Coordination Between Chen And Roy ........ 5

V. PILL AND CEPEDA SHOULD BE APPOINTED CO-LEAD PLAINTIFFS ........ 7

VI. THE APPOINTMENT OF ROBBINS AND WEISS LAW AS CO-LEAD COUNSEL BEST SERVES THE INTERESTS OF SUPER MICRO AND ITS STOCKHOLDERS ........ 9

A. The Quality Of The Pleadings Favors The Appointment of Robbins And Weiss Law As Co-Lead Counsel ........ 9

B. Robbins And Weiss Law Have Acted Vigorously ........ 11

C. Robbins' And Weiss Law's Appointment As Co-Lead Counsel Would Best Serve The Interests of Super Micro And Its Stockholders ........ 12

1. The History – Including Recent History – of Brown and Rosen Makes Their Proposed Co-Lead Counsel Structure Inappropriate ........ 12

2. Rosen and Brown's Track Record in Derivative Litigation Is Not Comparable to That of Robbins and Weiss Law ........ 17

VII. CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Berg v. Guthart*,
2014 U.S. Dist. LEXIS 105357 (N.D. Cal. July 30, 2014) .......... 9, 10

*Berkowitz v. Fodor*,
2006 U.S. Dist. LEXIS 96065 (N.D. Cal. Nov. 20, 2006) .......... 17

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
42 F.4th 1013 (9th Cir. 2022) .......... 4, 5

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017) .......... 11

*Dollens v. Zionts*,
2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001) .......... 10

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998) .......... 4

*DRFP L.L.C. v. Republica Bolivariana De Venez.*,
2009 U.S. Dist. LEXIS 105094 (S.D. Ohio Nov. 9, 2009) .......... 6

*Easton v. Bailey*,
2013 U.S. Dist. LEXIS 206751 (C.D. Cal. Jan. 4, 2013) .......... 9

*Foster v. Maxwell Techs., Inc.*,
2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) .......... 17

*Gera v. Palihapitiya*,
2024 U.S. Dist. LEXIS 144502 (D. Ariz. Aug. 13, 2024) .......... 10

*Hacker v. Peterschmidt*,
2006 U.S. Dist. LEXIS 77325 (N.D. Cal. Oct. 12, 2006) .......... 17

*In re Apple Inc. Stockholder Derivative Litig.*,
2020 U.S. Dist. LEXIS 114375 (N.D. Cal. June 29, 2020) .......... 19

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) .......... 10

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009) .......... 17

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
2024 U.S. Dist. LEXIS 104130 (D. Nev. June 12, 2024) .......... 12

*In re Emisphere Techs., Inc. S'holders Litig.*,
2021 Del. Ch. LEXIS 283 (Del. Ch. Dec. 6, 2021) .......... 12

*In re Endeavor Grp. Holdings, Inc.*,
2025 Del. Ch. LEXIS 181 (Del. Ch. July 22, 2025) ........................................................ 13

*In re Fox Corp. Derivative Litig.*,
307 A.3d 979 (Del. Ch. 2023)............................................................................................... 13

*In re Vanguard Chester Funds Litig.*,
783 F. Supp. 3d 815 (E.D. Pa. 2025) ................................................................................... 18

*In re Wells Fargo & Co. Hiring Practices Derivative Litig.*,
2023 U.S. Dist. LEXIS 120788 (N.D. Cal. July 13, 2023).................................................... 5

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
2017 U.S. Dist. LEXIS 5742 (N.D. Cal. Jan. 12, 2017) ...................................................... 17

*In re Wendy's Co. S'holder Derivative Action*,
44 F.4th 527 (6th Cir. 2022) ................................................................................................ 10

*In re Zoran Corp. Derivative Litig.*,
511 F. Supp. 2d 986 (N.D. Cal. 2007) ................................................................................. 11

*KBC Asset Mgmt. NV ex rel. Chemed Corp. v. McNamara*,
78 F. Supp. 3d 599 (D. Del. 2015)...................................................................................... 7, 9

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015).................................................................................. 20

*King v. Narasimhan*,
2026 U.S. Dist. LEXIS 117067 (W.D. Wash. May 27, 2026)...................................... 9, 14

*Larson v. Dumke*,
900 F.2d 1363 (9th Cir. 1990) ............................................................................................ 7, 8

*Perry v. Proposition 8 Official Proponents*,
587 F.3d 947 (9th Cir. 2009) .............................................................................................. 4, 5

*Rales v. Blasband*,
634 A.2d 927 (Del. 1993) .................................................................................................... 11

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ............................................................................................... 11

*Shenwick v. Twitter, Inc.*,
2016 U.S. Dist. LEXIS 177714 (N.D. Cal. Dec. 12, 2016).................................................. 17

*Spangler v. Pasadena City Bd. of Educ.*,
552 F.2d 1326 (9th Cir. 1977) ................................................................................................ 4

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) .................................................................................................. 5

*Thielmann v. MF Global Holdings Ltd.*,
464 B.R. 619 (Bankr. S.D.N.Y. 2012) ..... 9

*Viola v. Yost*,
2022 U.S. Dist. LEXIS 11942 (S.D. Ohio Jan. 24, 2022) ..... 6

**Rules**

Fed. R. Civ. P. 23.1 ..... 7, 8

Fed. R. Civ. P. 24(b) ..... 4

Fed. R. Civ. P. 42(a) ..... 5

Fed. R. Evid. 201(b) ..... 6

Plaintiffs David Pill ("Pill") and Joseph Cepeda ("Cepeda") respectfully submit this opposition to the Motion of Stanford Chen ("Chen") for Permissive Intervention and Cross-Motion to Consolidate Related Derivative Actions, Appoint Lead Counsel, and Appoint Lead Plaintiffs (ECF No. 45) (the "Chen Motion" or "Chen Mot.").

## I. SUMMARY OF ARGUMENT

Plaintiffs Pill and Cepeda worked to ensure an orderly and efficient process for consolidating the derivative actions pending before this Court (the "Related Derivative Actions")—which all parties agree is appropriate—and setting a coordinated schedule for briefing on leadership. Rather than achieve the obvious efficiencies engendered by stipulating to such a process, Plaintiff Pratchi Roy ("Roy"), through her counsel, The Brown Law Firm, P.C. ("Brown"), unilaterally moved on its own separate schedule for consolidation and appointment as lead counsel. Then, in tacit recognition of the obvious deficiencies in her motion, Roy apparently coordinated with other counsel, the Rosen Law Firm ("Rosen"), in a misguided attempt to cure those deficiencies. Brown's actions (joined now by Rosen) further underscore the numerous issues with Roy's leadership motion and her counsel's lawyer-driven tactics.

Rosen's actions in this matter also raise serious questions. Rosen moved to intervene in the Related Derivative Actions to seek consolidation despite the fact that Rosen had already filed a complaint in this Court on behalf of Plaintiff Stanford Chen ("Chen")—a complaint on which Brown was also was listed as counsel—and could have simply agreed to consolidation. Rosen's intervention motion smacks of pre-filing gamesmanship between Rosen and Brown and should be denied as both improper and unnecessary.

Just last month, Chen filed a derivative action in this Court with Brown (not Rosen) as his counsel. And in the joint declaration filed in support of Chen's intervention motion, Roy and Chen describe Brown and Rosen as their mutual counsel. By admitting representation by Brown, the joint declaration effectively concedes that Chen's interests are already represented in the Related Derivative Actions and, thus, that intervention is not warranted. Moreover, the joint declaration

contains no information as to how or why Chen suddenly decided to retain Rosen just as the fundamental deficiencies in Brown's leadership motion were being exposed. The purpose of the intervention motion is clear: Roy is effectively seeking to amend her leadership motion in a futile effort to get another bite at the apple. Plaintiffs Pill and Cepeda respectively submit that the Court should reject this gamesmanship and deny the intervention motion.

The Court likewise should deny Rosen's cross-motion for appointment of Roy and Chen as co-lead plaintiffs and Rosen and Brown as co-lead counsel. Chen's complaint (the "Chen Complaint" or "Chen Cmplt.") either was supplied by Brown or is a nearly verbatim copy of Roy's complaint (the "Roy Complaint") filed by Brown (minus the use of internal documents). Any "new" material in the Chen Complaint appears to have been copied from the recently filed amended complaint (the "Amended Securities Complaint") in the related securities class action pending in this Court (the "Securities Class Action"). Even Chen's verification seems to have been supplied by Brown. All of this raises serious questions about Rosen's representation of Chen—including whether Chen retained Rosen at Brown's direction—and further demonstrates the lawyer-driven nature of the relationship. Importantly, having copied other parties' complaints, Rosen cannot demonstrate that it has filed a quality pleading or acted with vigor on behalf of Super Micro Computer, Inc. ("Super Micro") and its stockholders. Brown's consistent failure to vigorously litigate derivative actions and lack of noteworthy results also is not cured by Brown's belated addition of Rosen as a proposed co-lead counsel.

Finally—and critical to the question of who should be appointed lead counsel—Brown's and Rosen's long and ongoing record of discordance renders their pairing inappropriate and not in the best interests of Super Micro and its stockholders. Both Brown and Rosen have made a series of filings in other derivative actions calling out each other's lawyer-driven litigation, lack of resources, inadequacy to serve as lead counsel, and even lack of candor with courts. In stark contrast, Robbins and Weiss Law have a demonstrated track record of success both individually and working together as a team for the benefit of public companies and their stockholders in

derivative actions; have filed high-quality pleadings; and have acted vigorously and efficiently in prosecuting their clients' claims. The interests of Super Micro and its stockholders would be best served by the appointment of Plaintiffs Pill and Cepeda as co-lead plaintiffs and Robbins and Weiss Law as co-lead counsel. Rosen's cross-motion should be denied.

## II. PROCEDURAL HISTORY

Pill filed the first of the Related Derivative Actions on May 19, 2026; Cepeda filed on July 10, 2026; and Roy filed on August 21, 2026. Pill and Cepeda's Cross-Motion (ECF No. 48) ("Opening Br.") at 5-6. The Court related each action to the Securities Class Action. *See Pill*, ECF No. 16; *Cepeda*, ECF No. 11; *Roy*, ECF No. 20. The actions arise from the alleged diversion of servers containing export-restricted U.S. artificial-intelligence technology to China and the resulting failures of oversight, internal controls, and disclosure. *See, e.g.*, *Pill*, ECF No. 1.

On October 1, 2026, Roy moved to consolidate the Related Derivative Actions and to appoint Brown as lead counsel, noticing the motion for November 5, 2026. ECF No. 36. On October 15, 2026, Pill and Cepeda cross-moved to consolidate, to be appointed Co-Lead Plaintiffs, and to appoint Robbins and Weiss Law as Co-Lead Counsel.[1] Pill and Cepeda each submitted a declaration attesting to their stockholdings, standing, understanding of the litigation, and commitment to serving as representative plaintiffs. Pill Decl. ¶¶ 3–5, 8; Cepeda Decl. ¶¶ 2–5, 7; Opening Br. at 8. Pill has held Super Micro stock continuously since March 19, 2024, and Cepeda since November 6, 2024. Pill Decl. ¶ 3 & Ex. A; Cepeda Decl. ¶ 3; Opening Br. at 8. Through a books-and-records demand, Robbins and Weiss Law obtained the internal Super Micro documents that Roy obtained, which will be used as appropriate in a consolidated complaint. Opening Br. at 16.

[1] Pill and Cepeda's Opening Br., the supporting Declarations of Shane P. Sanders (ECF No. 49) ("Sanders Decl."), David C. Katz (ECF No. 50) ("Katz Decl."), Joseph Cepeda (ECF No. 51) ("Cepeda Decl."), and David Pill (ECF No. 52) ("Pill Decl."), and their Response to Roy's Motion (ECF No. 46) are incorporated by reference.

## III. THE RELATED DERIVATIVE ACTIONS SHOULD BE CONSOLIDATED

All parties, including the Defendants, agree that the Related Derivative Actions should be consolidated. Nonetheless, rather than stipulate to consolidation in aid of efficiency, Chen has burdened this Court and the parties with unnecessary motion practice—just as Roy did. Roy's and Chen's vexatious conduct further demonstrates that they should not be appointed co-lead plaintiffs and their counsel should not be appointed co-lead counsel.

## IV. THE MOTION FOR INTERVENTION SHOULD BE DENIED

### A. A Separate Intervention Order Is Unnecessary

Chen seeks permissive intervention under Rule 24(b). Chen Mot. at 5. A court may permit intervention where the applicant shows independent grounds for jurisdiction, a timely motion, and a claim sharing a common question of law or fact with the main action. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Id.* In exercising that discretion, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Court may also consider the nature and extent of the applicant's interest, whether that interest is adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether the applicant will significantly contribute to the full development of the underlying factual issues. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009); *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022–23 (9th Cir. 2022); *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

Chen's principal argument for intervention is that his action overlaps with the Related Derivative Actions because it is brought on behalf of the same company, arises from the same alleged misconduct, names substantially the same defendants, and asserts substantially overlapping claims. Chen Mot. at 5-6. These are essentially the same arguments made in support of consolidation under Rule 42(a), to which all parties agree. Once consolidated, the Court can

consider Chen's leadership submission alongside the others. A separate intervention order adds nothing.

The motion to intervene is a transparent attempt by Roy and her counsel to amend their motion to appoint Brown lead counsel to make up for palpable deficiencies in that motion—including, but not limited to, the failure to seek appointment as lead plaintiff; pleading deficiencies related to standing allegations in the Roy Complaint; the lack of sufficient resources of Roy's counsel; and other inadequacies of Roy's counsel demonstrated in Plaintiff Pill and Cepeda's opposition brief. Because Chen has already filed a factually related complaint, he is free to move for appointment as lead plaintiff without intervention, and Roy may withdraw her motion and file a new joint motion with Chen. Chen should not, however, be permitted to intervene here given that he must concede that his interests (as opposed to those of Super Micro and its shareholders) are being adequately represented by Roy, whom he proposes as his co-lead plaintiff, and by Brown, whom he proposes as co-lead counsel. *See Perry*, 587 F.3d at 955; *Callahan*, 42 F.4th at 1022–23. Indeed, Chen does not even argue that his interests are not adequately represented by Roy and her counsel, nor could he in light of their now joint application to serve together.

*In re Wells Fargo & Co. Hiring Practices Derivative Litigation*, 2023 U.S. Dist. LEXIS 120788 (N.D. Cal. July 13, 2023), on which Chen relies, Chen Mot. at 5–6, does not support his proposed intervention. There, the proposed intervenor had not yet filed a complaint because she had not yet completed her Section 220 books and records inspection. Here, Chen has not made a Section 220 demand and, in fact, already filed his complaint. Moreover, in *Wells Fargo*, co-lead counsel had already been appointed by means of a stipulated order – here, there has been no such appointment. A motion to intervene is not warranted and, in any event, is not necessary in order for Chen to file a leadership motion.

**B. Chen's Proposed Intervention Reflects Improper Gamesmanship by Chen and Roy and Their Counsel**

Courts take "well-pleaded, nonconclusory allegations" in a motion to intervene as "true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810,

820 (9th Cir. 2001). Chen recently appeared as Brown's client in a different derivative action, and the complaint he filed here was drafted by (or almost entirely copied from the complaint drafted by) Brown. Chen's proposed intervention here is a sham that attempts to cure deficiencies in Roy's motion to appoint Brown as lead counsel and should be denied.

In *Chen v. Zadno*, No. 5:26-cv-10492-BLF (N.D. Cal.), filed by Brown one month before this motion, Chen executed a verification identical to the one he executed and attached to the complaint filed here by Rosen. *Compare Chen v. Zadno*, ECF No. 1 (verification), *with Chen v. Liang*, No. 3:26-cv-11996 (N.D. Cal.), ECF No. 1 (verification).[2] Both contain obvious differences from the verifications that Rosen's own clients execute in other derivative actions. *See, e.g.*, Declaration of David C. Katz in Support of Opposition (filed herewith) ("Katz Opp. Decl."), Exs. 1-3. Brown not only apparently supplied a client and verification to Rosen, but also appears to have supplied Rosen with the actual complaint Chen filed. Indeed, nearly three quarters of the Chen Complaint is word-for-word the same as the Roy Complaint. Katz Opp. Decl., Ex. 4 (comparison of Chen Complaint with Roy Complaint).

Further, the rapidity with which the Chen Complaint was filed and immediately followed by the Chen Motion (supported by the joint declaration of Roy and Chen) reflects the pre-filing coordination of Brown and Rosen. "[P]re-filing coordination is an unusual circumstance militating against intervention." *Viola v. Yost*, 2022 U.S. Dist. LEXIS 11942, at *5 (S.D. Ohio Jan. 24, 2022); *DRFP L.L.C. v. Republica Bolivariana De Venez.*, 2009 U.S. Dist. LEXIS 105094, at *18 (S.D. Ohio Nov. 9, 2009) (the creation of an entity for the purposes of intervention is an unusual circumstance militating against intervention). The Chen Motion itself concedes coordination with Brown, with the mutual declaration signed by both Chen and Roy referring to Brown and Rosen as "our counsel." ECF No. 54-1 ¶ 6. Intervention should be denied due to (among other reasons) the "unusual circumstances" of Chen's coordination, which exposes the motion as a sham.

[2] The Court may take judicial notice of filings in this District. *See* Fed. R. Evid. 201(b).

## V. PILL AND CEPEDA SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

A lead plaintiff in a derivative action must be able to "fairly and adequately represent the interests of shareholders . . . in enforcing the right of the corporation." Fed. R. Civ. P. 23.1(a). Relevant considerations include the plaintiff's capacity to prosecute the case "vigorously and conscientiously" and "the degree of control exercised by the attorneys over the litigation." *Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990). Super Micro is best served by lead plaintiffs who have personally committed to overseeing the litigation.

In support of their motion to be appointed lead plaintiffs, Pill and Cepeda have made that commitment on the record. Each submitted a declaration attesting to his respective stockholdings, continuous ownership, understanding of the litigation, and commitment to serving as a representative plaintiff, and Cepeda holds a substantial stake in the Company. Pill Decl. ¶¶ 3–8; Cepeda Decl. ¶¶ 2–7.[3] Roy, in contrast, initially did not move to be appointed lead plaintiff, and did not even submit a declaration in support of her motion to appoint Brown lead counsel. ECF No. 36. Now, Roy tardily seeks appointment as a lead plaintiff through the Chen Motion and belatedly supplies a declaration that is still inadequate. Brown sharing a client with and supplying a complaint to the Rosen firm does nothing to overcome the deficiencies in Roy's motion.

Chen likewise has failed to demonstrate that his appointment as lead plaintiff would be in the best interests of Super Micro and its stockholders. As discussed above, Chen is Brown's client in another derivative action filed just one month before this one, and the complaint and verification Chen filed here largely mirror Brown's complaint and Brown's form client verification, respectively. *See* Section IV.B, *supra*. Brown, having already moved through Roy to be appointed sole lead counsel, ECF No. 36, now seeks a co-lead position through a second plaintiff it already

[3] Chen cites *KBC Asset Management NV ex rel. Chemed Corp. v. McNamara*, 78 F. Supp. 3d 599 (D. Del. 2015), for the standard governing lead-plaintiff appointments. Chen Mot. at 14. The court in *KBC* appointed the movant with "a more significant financial stake in the litigation." *Id.* at 607. Here, that standard favors Pill and Cepeda, who hold substantially more Super Micro stock than Roy and Chen. Cepeda Decl. ¶ 3; Opening Br. at 4, 8.

represents, alongside a firm that has publicly questioned Brown's capacity to serve in a leadership role in derivative litigation. *See* Section VI.C, *infra*. Nothing in the record suggests that Chen, rather than his counsel, decided to file a second, nearly identical action and to pursue this leadership arrangement. In weighing "the degree of control exercised by the attorneys over the litigation," *Larson*, 900 F.2d at 1367, the Court should decline to appoint a plaintiff whose participation appears to have been arranged by counsel in a misguided attempt to secure a leadership position. In contrast to the repeat plaintiffs (Roy and Chen), neither Pill nor Cepeda has previously served as a lead or representative plaintiff in a shareholder action. Pill Decl. ¶ 5; Cepeda Decl. ¶ 5.

Pill and Cepeda also have demonstrable standing to bring the claims asserted in the derivative actions, having pled the dates of their purchase of Super Micro stock, which evidences that they held Super Micro stock at the time of the conduct on which their claims principally rest, as required by Fed. R. Civ. P. 23.1. The board-level conduct on which the Pill and Cepeda complaints focus – including the December 2024 Special Committee clearance, the Audit Committee's response to the April 2025 compliance hold and the August 2025 Bureau of Industry and Security notice, the Compensation Committee's milestone certifications, and the 2025 and 2026 proxy solicitations—occurred after Pill acquired his shares on March 19, 2024, and after Cepeda acquired his shares on November 6, 2024. Katz Decl. ¶ 16; Pill Decl. ¶ 3; Cepeda Decl. ¶ 3; *Pill*, ECF No. 1, ¶¶ 107, 120, 130–31, 175–77. Plaintiffs Pill and Cepeda also have adequately pled their standing, filed declarations reflecting their interest in the litigation and intent to actively participate therein, and retained counsel with superlative experience in derivative litigation who have acted professionally and efficiently. Pill Decl. ¶¶ 3–8; Cepeda Decl. ¶¶ 3–8.

Roy's newly minted request to serve as co-lead plaintiff, as well as Chen's request to serve with her as co-lead plaintiff (improperly made through coordination between their counsel), should be denied, and Pill and Cepeda should be appointed as co-lead plaintiffs.

## VI. THE APPOINTMENT OF ROBBINS AND WEISS LAW AS CO-LEAD COUNSEL BEST SERVES THE INTERESTS OF SUPER MICRO AND ITS STOCKHOLDERS

Robbins and Weiss Law's appointment as Co-Lead Counsel is in the best interests of Super Micro and its stockholders. In determining the most appropriate leadership structure, courts consider "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel," *Easton v. Bailey*, 2013 U.S. Dist. LEXIS 206751, at *3 (C.D. Cal. Jan. 4, 2013), guided by which counsel will best serve the interests of the corporation and its stockholders. *See Berg v. Guthart*, 2014 U.S. Dist. LEXIS 105357, at *16-17 (N.D. Cal. July 30, 2014). Each factor favors the structure Pill and Cepeda propose.

### A. The Quality of the Pleadings Favors the Appointment of Robbins and Weiss Law as Co-Lead Counsel

Chen's pleading was either supplied by Brown or largely copied from Brown's complaint. *See* Section IV.B, *supra*. The remainder is copied from the recently filed complaint in the Securities Class Action.[4] Chen's copying of that complaint does nothing to establish the quality of his pleading. On the contrary, the Chen complaint – assembled by cutting and pasting from other pleadings – reflects negatively on Rosen's request to serve as lead counsel. *See King v. Narasimhan*, 2026 U.S. Dist. LEXIS 117067, at *9 (W.D. Wash. May 27, 2026) (in selecting lead counsel in derivative litigation, courts consider "whether one complaint is simply a 'copycat action' of another"); *KBC*, 78 F. Supp. 3d 599, 606 (finding that a "substantial portion of the substantive allegations" in the complaint filed by counsel seeking appointment as lead "were copied – either verbatim or nearly verbatim" – favors competing movant); *Thielmann v. MF Global Holdings Ltd*, 464 B.R. 619, 625 n.4 (Bankr. S.D.N.Y. 2012) (considering movant's "nearly-word-for-word copy

[4] Twenty-seven paragraphs of the Chen Complaint contain passages identical to passages in the Amended Securities Complaint. The remainder merely restates allegations from the Amended Securities Complaint in reworded form. *See, e.g.*, Chen Cmplt. ¶¶ 56-64, 99-118, 131-136, 139–140, 148–155, 159–163, 185–186, 197–200, 207–215, 253-266, 291. Chen acknowledges that the statements of former employees are drawn solely from the Amended Securities Complaint and do not reflect any independent investigation. *Id.*, at ¶¶ 56–64, 253–266.

of the complaint" filed by other counsel as a factor in denying that movant's application to serve as lead counsel); *Dollens v. Zionts*, 2001 U.S. Dist. LEXIS 19966, at *19 (N.D. Ill. Dec. 4, 2001) (citing the fact that a party "merely reworked" another complaint as a factor reflecting negatively on lead appointment).

Moreover, since the former-employee allegations come from the Amended Securities Complaint, Chen Cmplt. ¶¶ 56, 253, and the remaining developments are matters of public record, they are equally available to any counsel the Court appoints. Where competing counsel have access to the same information, the inclusion of public material disclosed after a competing litigant's initial filings carries little weight in the balance required for choosing lead counsel. *See Berg*, 2014 U.S. Dist. LEXIS 105357, at *24-25 (treating quality of pleadings as neutral where the competing plaintiff held "all of the same records"); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 273 (S.D.N.Y. 2009) (differences among complaints may be addressed in a consolidated complaint); *In re Wendy's Co. S'holder Derivative Action*, 44 F.4th 527, 534 (6th Cir. 2022).

The Pill and Cepeda complaints, on the other hand, reflect their counsel's substantial investigation and vast experience. They allege that Audit Committee members approved the Special Committee's December 2024 export-control "clearance" and did not revisit it after the Company's April 2025 compliance hold on shipments to a key customer or the August 2025 notice from the Bureau of Industry and Security that the customer was diverting servers to China. *Pill*, ECF No. 1, ¶¶ 130-31, 148-49, 160-61; *Cepeda*, ECF No. 1, ¶ 163. They further allege that Compensation Committee members certified revenue milestones inflated by the diversion scheme, vesting options on 4,000,000 shares for defendant Liang. *Pill*, ECF No. 1, ¶¶ 120, 132, 137, 155; *Cepeda*, ECF No. 1, ¶¶ 164, 185. Allegations tying directors to actual benefits and specific decisions are stronger than theories resting solely on directors' eligibility for future equity awards, which "merely creates the possibility" of a benefit, *Gera v. Palihapitiya*, 2024 U.S. Dist. LEXIS 144502, at *22 (D. Ariz. Aug. 13, 2024), or on insider sales pleaded without historical trading

context, *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001); *Curry v. Yelp Inc.*, 875 F.3d 1219, 1226–27 (9th Cir. 2017). Likewise, Super Micro is best served by focusing on its core fiduciary and federal claims rather than separate counts for abuse of control and gross mismanagement, which courts in this District treat as "a repackaging of claims for breach of fiduciary duties." *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1019 (N.D. Cal. 2007); *see* Chen Mot. at 4–5. Robbins and Weiss Law – the counsel who developed the director-specific theories – are best positioned to build on them.

**B. Robbins And Weiss Law Have Acted Vigorously**

Chen waited seven months after the federal indictment was unsealed to file a derivative complaint copied from existing pleadings. Yet, Chen touts this fact as a reason why he should be appointed to a leadership position, effectively seeking to make his counsel's lack of diligence a virtue.[5] It is not. In fact, Rosen's delay could undermine its pleading of demand futility since demand futility is assessed at the time of the filing of the complaint. *Rales v. Blasband,* 634 A.2d 927, 934 (Del. 1993) ("a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."). Notably, one of the directors, Defendant Judy Lin, who sat on the Board at the time of the misconduct, resigned about one week before the Chen Complaint was filed, and a new non-defendant director has joined the Board.

The vigorousness of prosecution factor looks to the work counsel has done, and an independent investigation is the foundation of that work. The Chen Complaint reflects none. Its

[5] Brown has explained that Rosen files derivative suits "only if and after having made a failed application for the appointment of lead or co-lead counsel in a related securities class action." *In re Vestis Corp. Derivative Litig.*, No. 1:25-cv-02726-TWT (N.D. Ga. Nov. 4, 2025), ECF No. 18 at 11 n. 2, 19 (Katz Opp. Decl., Ex. 5) ("Gribe Opp."). That is exactly what happened here. Rosen did not conduct an investigation. Rather it sought to serve as lead counsel in the Securities Class Action and only filed the Chen Action after this Court appointed other counsel as lead in the Securities Class Action. *In re Super Micro Computer, Inc. Sec. Litig.*, No. 3:26-cv-02606-JSC, ECF Nos. 35, 70, 95.

core is Brown's complaint, and the new factual material comes from the Amended Securities Complaint. *See* Section IV.B, *supra*; n.4, *infra*. Copying other complaints does not reflect a thorough independent investigation or vigorous action.

In contrast to Rosen's minimal involvement and effort in this matter, Robbins and Weiss Law have acted vigorously to protect the interests of Super Micro and its stockholders. Robbins and Weiss Law investigated and filed the first two of the Related Derivative Actions, developed allegations addressing liability and demand futility, obtained the Company's internal books and records, coordinated scheduling and case organization, and proposed consolidation terms and a coordinated leadership schedule. Opening Br. at 15–18; Sanders Decl. ¶¶ 3–6; Katz Decl. ¶¶ 14–15. That work – together with Robbins' and Weiss Law's demonstrated history working together—gives the Court a concrete basis for evaluating how the proposed team will manage the consolidated action and reflects its commitment to moving the case forward efficiently for Super Micro's benefit.

### C. Robbins' And Weiss Law's Appointment as Co-Lead Counsel Would Best Serve the Interests of Super Micro and its Stockholders

#### 1. Brown's and Rosen's History—Including Very Recent History—Makes Their Proposed Co-Lead Counsel Structure Untenable

Brown's and Rosen's history and ongoing personal and professional disputes render them wholly unsuitable partners to serve as co-lead counsel representing Super Micro and its stockholders in this derivative action.

One factor courts consider in deciding whether to appoint law firms as co-lead counsel is their ability to work cooperatively and efficiently together. *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, 2024 U.S. Dist. LEXIS 104130, at *19-20 (D. Nev. June 12, 2024). The court's task in a leadership dispute is to "establish a leadership structure that will provide effective representation [.]" *In re Emisphere Techs., Inc. S'holders Litig.*, 2021 Del. Ch. LEXIS 283, at *2 (Del. Ch. Dec. 6, 2021). In doing so, the court must be satisfied that the proposed co-lead counsel "will be able to work together in furtherance of the best interests of the class." *Id.* at *7. Where,

as here, the very firms seeking a joint co-lead appointment have openly attacked one another's competence and good faith, courts decline to appoint them because such hostility makes it unlikely they can work together to direct the litigation. *See, e.g., In re Fox Corp. Derivative Litig.*, 307 A.3d 979, 993-94 (Del. Ch. 2023) (weighing "inter-firm rivalry" between two proposed co-lead counsel firms as a significant factor against their appointment, and instead appointing co-lead counsel whose "backstory suggest[ed] that the c[ould] function effectively"); *In re Endeavor Grp. Holdings, Inc.*, 2025 Del. Ch. LEXIS 181, at *7 (Del. Ch. July 22, 2025) ("heated" and "ad hominem" attacks between counsel created "valid fears" that a co-lead counsel appointment "would prompt deadlock, disorganization, inefficiency, and disagreement").

Here, Rosen and Brown have demonstrated a deep-seated animosity toward each other and have openly and repeatedly questioned each other's capabilities and law practices. Nonetheless, apparently seeing its chances of leading this action slipping away, Brown resorted to using one of its repeat player clients from its stable to retain Rosen to file a second, duplicative, and unnecessary complaint.[6] While these two firms purport to have put their differences aside for purposes of the instant motion, their past and ongoing disputes and public attacks on each other raise significant unanswered questions about their ability to litigate effectively together.

While Plaintiffs Pill and Cepeda take no position as to the accuracy or merit of Rosen's and Brown's claims about each other, their mutual attacks cannot be ignored in the context of the pending leadership motions and, if true, would seem to make it impossible for them to work together cooperatively.

By way of example, in a declaration during a leadership fight between Brown and Rosen (among others), Brown's founding partner, Tim Brown, declared under penalty of perjury that he has "concerns about Rosen's . . . capabilities." *In re Starbucks Corp. Stockholder Derivative Litig.*,

[6] At a minimum, Brown represented Stanford Chen in *Chen v. Zadno et al*, (N.D. Cal. No. 5:26-cv-10492). Notably, Chen's declaration is silent as to when he first discussed his action with Rosen or how he decided to consider selecting Rosen as his counsel.

Lead Case No. 2:24-cv-01720-JHC (W.D. Wash. Feb. 2, 2026), ECF No. 31 at 5 (Katz Opp. Decl., Ex. 6) ("*Starbucks* Brown Decl.").[7] Mr. Brown explained that "[f]rom [his] longstanding professional experience with Rosen," he is aware of "only two to three attorneys at … Rosen … who primarily focus on shareholder derivative cases." *Id.* After conducting a survey of derivative actions filed by Rosen, Mr. Brown stated "[d]espite filing 73 derivative cases of the 303 total cases in which Rosen was involved since January 2024, the public record shows that Rosen has not actively litigated any of its shareholder derivative cases, but only litigates its class actions." *Id.* at 6. Mr. Brown went on to aver that Rosen has a "'lawyer-driven' modus operandi." *Id.* Mr. Brown then stated that "Rosen has historically failed to vigorously litigate its derivative cases[,]" pointing out that when Brown and Rosen work cases together "[Brown's] lodestar was often ten times Rosen's." *Id.* Mr. Brown claimed that, as of the date of the filing, that "Rosen has not litigated a substantive motion in a single derivative case" in two years. *Id.* at 7. In fact, according to Mr. Brown, Rosen's derivative litigation ability was so deficient that Brown had to "move to intervene in a derivative action Rosen filed to protect the interests of the nominal defendant[.]" *Id.* Mr. Brown also pointed out that Rosen was sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure in a securities class action, *Toft v. Harbor Diversified, Inc.*, Case No. 1:24-cv-00556-WCG (E.D. Wis.). *Id.* at 9. According to Mr. Brown, "the court reprimanded Rosen for filing a 'frivolous' complaint, as 'even the most basic of pre-suit investigation would have made clear that the original complaint was groundless on the facts alleged.'" *Id.* Mr. Brown went on to detail other errors in Rosen-led actions. *Id.*

Mr. Brown's declaration included approximately four pages chronicling the soured relationship between Rosen and Brown, and attached a number of filings as supporting exhibits.

---

[7] At Rosen's request, the *Starbucks* court struck this declaration for containing "unsupported assertions, inflammatory statements, and many facts and arguments that are irrelevant." *King v. Narasimhan*, 2026 U.S. Dist. LEXIS 117067, at *14 (W.D. Wash. May 27, 2026). Pill and Cepeda cite it only to show the accusations these firms have made against each other and their inability to work cooperatively in a co-lead role.

In one such filing, Brown complained that Rosen was unwilling to work cooperatively with Brown and that Rosen's efforts "to displace [co-lead counsel] were "motivated by little more than pecuniary self-interest." *Id.,* Ex. 16-C at 18. Mr. Brown claimed that Rosen has repeatedly interfered with Brown's litigation because a partner at Rosen has a "vendetta" against Mr. Brown. *Id.* at 15. According to Mr. Brown, this vendetta arose out of a $73,000 attorney's fees dispute, and Mr. Brown quoted an email from a Rosen partner stating that "[w]e'll make the $73K up in spades opposing you at every turn. Fine with me and my staff is looking forward to it—as it is clear you are unwilling to act in a professional manner with these legacy cases." *Id.* at 14.[8] Mr. Brown declared, again under penalty of perjury, that the Rosen partner "***falsely*** stated that he had no personal vendetta against me" and that Rosen was able to offer "no explanation to address the direct evidence contradicting his ***false*** statement[.]" *Id.* at 16-17. Thus, Brown has, under oath, accused one of the Rosen partners litigating this action of making a false statement in a court filing.

Rosen, in turn, has repeatedly criticized Brown. Rosen has accused Brown (and its co-counsel) of "omitting" and "withholding" information from a court for a tactical advantage and racing to the courthouse. *Id.,* Ex. 16-B at 1. Rosen called Brown's efforts to get itself appointed lead without appropriate judicial scrutiny Brown's "modus operandi." *Id.,* Ex. 16-B at 2. In another matter, Rosen called Brown's race to the courthouse, filings in multiple courts, and subsequent attempt to appoint itself co-lead, the product of "improper lawyer driven tactics." *Vestis*, ECF No. 13 at 5 (Oct. 21, 2025) (Katz Opp. Decl., Ex. 7) ("*Vestis* Mot.").

As Brown points out, Rosen has chastised Brown for using "'questionable' or 'repeat' plaintiffs in unrelated cases." *Starbucks* Brown Decl. at 8.[9] Notably, one of the repeat plaintiffs Rosen pointed out was Anand Roy. *Id.* As Plaintiffs Pill and Cepeda pointed out, Anand Roy is

---

[8] The partner in question is Phillip Kim, who is listed as one of the attorneys in this matter.

[9] For example, in one matter Rosen stated that "Brown and [another firm] regularly use repeat plaintiffs to file cases and strategically position themselves in a leadership position." *Vestis* Mot. at 6.

from the same Roy litigation kennel as proposed co-lead plaintiff Pratchi Roy. ECF No. 46 at 13 & n.11; *see also id.* at 10 n.8. Just months after criticizing the Roy litigation kennel, Rosen now seeks to align itself with it.

Rosen also has repeatedly claimed that Brown is "spread too thin[,]" and makes litigation mistakes as a result. *Starbucks* Brown Decl. at 9. Rosen has further stated that "Brown Law … has the [] reputation and business practice of filing early, staying the actions, and assigning a skeleton crew without much litigation." *Combs v. Broussard*, No. 3:25-cv-00171-RGJ (W.D. Ky. June 10, 2025), ECF No. 13 at 6 (Katz Opp. Decl., Ex. 8). Rosen has also called Brown serving as co-lead counsel "problematic" because of its "pattern of racing to the courthouse by rapidly filing complaints and using questionable plaintiffs[.]" *Starbucks*, ECF No. 23 at 3 (Jan. 16, 2026) (Katz Opp. Decl., Ex. 9).

Rosen recently opposed Brown's service as lead counsel in a derivative action, arguing that the firm "does not have sufficient resources or capacity to adequately lead litigation of this matter." *Wren v. Cohen*, No. 1:25-cv-06625-JHR (S.D.N.Y. Sept. 19, 2025), ECF No. 16 at 2 (Katz Opp. Decl., Ex. 10) ("*iRobot* Letter"). Pointing to the volume of Brown's filings, Rosen told that court that Brown was "spread too thinly across too many cases to have a leadership role in this case," and that Rosen therefore "did not agree to any leadership structure under which Brown Law would be Lead or Co-Lead Counsel." *Id.* One month later, Rosen moved in the Northern District of Georgia to vacate an order appointing Brown as co-lead counsel, again arguing that Brown was "spread too thin to adequately represent the interests of the real party in interest," having filed at least 79 cases that year while employing "just six attorneys," of whom "just four appear to be full time." *Vestis* Mot. at 1, 10 n.4.

In short, one of the proposed co-lead counsel (Brown) accused the other (Rosen) of lying to courts, refusing to work cooperatively with it, and having a vendetta against it. The other counsel (Rosen) has accused the first counsel (Brown) of withholding and omitting information from courts, being spread too thin, and engaging in improper tactics using repeat players (like the

ones that retained Rosen and Brown here). Yet, Chen offers no explanation as to how the two firms have coordinated and intend to work together here. *See* Declaration of Laurence M. Rosen ¶ 3 (ECF No. 45-1). Brown and Rosen working as co-lead counsel here makes no sense, and the Court should decline to appoint Brown and Rosen to leadership positions.

**2. Rosen and Brown's Track Record in Derivative Litigation Is Not Comparable to That of Robbins and Weiss Law**

In appointing co-lead counsel, the focus is upon relevant experience, *i.e.*, success in the type of action being litigated, not general experience as an attorney. *See, e.g.*, *In re Wells Fargo & Co. S'holder Derivative Litig.*, 2017 U.S. Dist. LEXIS 5742, at *13 (N.D. Cal. Jan. 12, 2017); *Hacker v. Peterschmidt*, 2006 U.S. Dist. LEXIS 77325, at *16 (N.D. Cal. Oct. 12, 2006) (court considered firms' "extensive experience in prosecuting shareholder derivative litigation"); *Shenwick v. Twitter, Inc.*, 2016 U.S. Dist. LEXIS 177714, at *7-8 (N.D. Cal. Dec. 12, 2016) (in appointing lead counsel in a securities class action, court noted that the appointed firm has "experience with securities class action cases, and has served as lead counsel in other similar cases in this district"); *Foster v. Maxwell Techs., Inc.*, 2013 U.S. Dist. LEXIS 154538, at *18-19 (S.D. Cal. Oct. 24, 2013) (court considered counsel's "extensive experience litigating securities class actions"); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 590 (C.D. Cal. 2009) (court considered the "firm's experience in prior securities class actions"); *Berkowitz v. Fodor*, 2006 U.S. Dist. LEXIS 96065, at *6-7 (N.D. Cal. Nov. 20, 2006) (court considered the "firms' experience with similar shareholder actions").

This case requires counsel who can manage complex derivative litigation running alongside a securities class action and criminal proceedings, involving fiduciary-duty, securities, and export-control issues. Opening Br. at 17–18. Weiss Law has extensive experience prosecuting derivative and complex securities matters. Katz Decl. ¶¶ 5–7, 9. Weiss Law's results for corporations include approximately $100 million in the Freddie Mac derivative litigation, $35 million in *In re Marsh & McLennan Derivative Litigation*, a $32.5 million recovery as sole lead counsel in *In re Equifax, Inc. Derivative Litigation*, and $25 million in *In re FirstEnergy*

*Stockholder Derivative Litigation*, along with significant governance reforms. *Id.* ¶¶ 3-6. Robbins's sterling qualifications and results – including multiple nine-figure recoveries for corporations in derivative litigation in the last two years alone – are detailed in the opening brief. Opening Br. at 9-12; Sanders Decl. ¶¶ 7-13. Both firms have the personnel, financial resources, and e-discovery infrastructure this case demands. Sanders Decl. ¶ 14; Katz Decl. ¶¶ 9-11; Opening Br. at 12, 15.

Brown does not have an equivalent track record of success in derivative litigation, and its addition of Rosen does not resolve this deficiency in its application. Rosen points to its service as lead counsel in *In re Vanguard Chester Funds Litigation*, in support of its appointment as co-lead counsel here. However, it omits that in that case, Rosen, as lead counsel, failed to inform the court that the SEC had entered into a settlement with the defendant that would provide a larger recovery to the class than the one negotiated by Rosen. The court "became concerned that a conflict of interest had developed between the class and its representatives and counsel," *In re Vanguard Chester Funds Litig.*, 783 F. Supp. 3d 815, 832 (E.D. Pa. 2025), and also voiced "concern regarding the lack of proactive disclosure from class counsel ….," *id.* at 833-834. Ultimately, the court rejected the initial settlement proposed by Rosen holding that it was "not 'fair, reasonable, and adequate' as required by Rule 23(e)," *id.* at 834, and concluded that "the proposed settlement provide[d] no value to the class." *Id.* at 821.[10]

Rosen also cites *In re Inotiv Stockholder Derivative Litigation*, Lead Case No. 4:22-cv-00064-PPS-AZ (N.D. Ind. Mar. 19, 2026), claiming to have "secured" a recovery there. Chen Mot. at 11. However, it appears that the driving force for that settlement was the effort of counsel in related state court litigation, who accounted for about 61% of the reported time and lodestar, as

[10] In *Impinj*, where Rosen and Brown served as co-lead counsel, the court was so concerned about the settlement presented that it considered appointing a friend of the court to "make the adversarial argument against the settlement, or against the attorneys' fees, or against both." *In re Impinj, Inc. Derivative Litig.*, No. 18-1686-RGA, ECF No. 42 (Hr'g Tr.) at 37:3–7 (D. Del. May 11, 2021) (Katz Opp. Decl., Ex. 11).

opposed to less than 19% for Rosen. Katz Opp. Decl., Ex. 12. Rosen's reliance on *comScore* is similarly overstated, having served as counsel in a state action when different counsel served as lead in the federal action where the settlement was approved. *Id.,* Ex. 13. The reported time confirms that Rosen was not the driving force, accounting for only approximately 11% of the reported time and 13% of the reported lodestar, as opposed to the federal lead counsel who logged nearly three times as many hours. *Id.,* Ex. 14. Even just within the state action Rosen co-led, Rosen logged less than 29% of the time. *Id.*

Rosen's reliance on *Kistenmacher v. Atchison* (*SeaWorld*) (Chen Mot. at 11) fares no better. Brown informed a federal court that during the time the two firms litigated derivative cases jointly from 2014 through 2023 – a period that encompasses the *SeaWorld* and *comScore* cases – "Brown did the vast majority of the work, with Rosen playing the de facto role of supporting and referring counsel." Gribe Opp. at 17 (Katz Opp. Decl., Ex. 5). Rosen itself joined a brief describing its role in those cases as "to assist" Brown in its role "as de facto lead counsel for plaintiffs." *In re Synchrony Fin. Derivative Litig.*, No. 3:19-cv-00130-VAB (D. Conn. Mar. 4, 2024), ECF No. 29-1 at 6 (Katz Opp. Decl., Ex. 15). Rosen's overstating its role in the actions it cites weighs against its application to serve as co-lead counsel. *In re Apple Inc. Stockholder Derivative Litig.*, 2020 U.S. Dist. LEXIS 114375, at *3 (N.D. Cal. June 29, 2020) (appointing Robbins and Weiss Law co-lead counsel after considering, among other things, that competing movant "overstates its role in certain cases").[11]

[11] Robbins and Weiss Law have an established working relationship. They have served together in leadership in *Apple* and *Rivian* and have worked cooperatively in other derivative matters involving governance, internal controls, and compliance. *See, e.g.*, *Wolfson v. Spiegel (Snap Inc.)*, No. BC720152 (Cal. Super. Ct. L.A. Cnty. Jan. 12, 2021). In *Misonix*, for example, they negotiated reforms to strengthen the company's compliance with the Foreign Corrupt Practices Act. *In re Misonix, Inc. S'holder Litig.*, No. 2:17-cv-03385-ADS-AYS (E.D.N.Y. July 26, 2019). Katz Decl. ¶¶ 12-13; Sanders Decl. ¶ 15. Their proposal allocates responsibility between the firms, presents a coordinated position to the Court and defense counsel, and commits to avoiding duplication. Opening Br. at 19-20; Sanders Decl. ¶ 16. That demonstrated partnership is the best assurance that Super Micro's claims will be prosecuted efficiently.

Finally, Chen emphasizes Rosen's experience with Chinese issuers, including its Chinese-speaking personnel and its handling of PRC state-secrets, discovery, and service issues. Chen Mot. at 12-13. However, that experience arose in securities actions against China-based companies, where litigation turned on obtaining evidence and serving defendants abroad. *See, e.g.*, *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 540 (S.D.N.Y. 2015). Super Micro, as Chen acknowledges, "is based in the United States." Chen Mot. at 12. The claims here concern the conduct of Super Micro's directors and officers under Delaware fiduciary law, the federal securities laws, and U.S. export-control laws, and Chen identifies no task requiring China-specific capabilities that the proposed Robbins-Weiss Law team cannot perform or arrange.

## VII. CONCLUSION

For the foregoing reasons, and the reasons set forth in Pill and Cepeda's Cross-Motion, the Court should: (1) deny Chen's motion for permissive intervention; (2) consolidate Chen's action with the Related Derivative Actions; (3) deny Chen's cross-motion for the appointment of Rosen and Brown as co-lead counsel and Chen and Roy as co-lead plaintiffs; and (4) grant Pill and Cepeda's Cross-Motion and appoint Pill and Cepeda as co-lead plaintiffs and Robbins LLP and Weiss Law as co-lead counsel.

Respectfully submitted,

DATED: October 29, 2026

ROBBINS LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
SHANE P. SANDERS

*/s/ Shane P. Sanders*
SHANE P. SANDERS

5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
csmith@robbinsllp.co
ssanders@robbinsllp.com

*Counsel for Plaintiff Joseph Cepeda and [Proposed] Co-Lead Counsel*

DATED: October 29, 2026

WEISS LAW
JOEL E. ELKINS

*/s/ Joel E. Elkins*
JOEL E. ELKINS

1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: (310) 208-2800
Facsimile: (310) 209-2348
E-mail: jelkins@weisslawllp.com

WEISS LAW
DAVID C. KATZ
JOSHUA M. RUBIN
MARK D. SMILOW
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 682-3025
E-mail: dkatz@weisslawllp.com
jrubin@weisslawllp.com
msmilow@weisslawllp.com

*Counsel for Plaintiff David Pill and [Proposed] Co-Lead Counsel*

**ATTESTATION**

I, Shane P. Sanders, am the ECF User whose ID and password are being used to file Plaintiffs David Pill and Joseph Cepeda's Opposition to Motion of Stanford Chen for Permissive Intervention and Cross-Motion to Consolidate Related Derivative Actions, Appoint Lead Counsel, and Appoint Lead Plaintiffs. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

October 29, 2026 *<u>/s/ Shane P. Sanders</u>*
SHANE P. SANDERS

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered counsel of record.

*/s/ Shane P. Sanders*
SHANE P. SANDERS